Our fifth case for today is United States v. Monta Groce Ms. Christensen May it please the Court, Counsel. Good morning, Your Honors. My name is Joanna Christensen and I represent the defendant, Monta Groce, in this case. And then I said it wrong. Excuse me. I acknowledge that the Flores case waiver provisions would apply in this case absent compelling reasons for this court to disregard the waiver. And I also acknowledge the recent Edwards case dealing with the first condition of supervised release that we have challenged and submit that in Mr. Groce's case that compelling reasons can exist for this court to at least send it back to correct the two issues that we've raised. What test would you propose for determining waiver, you know, since you argue that we should reject our analysis in Flores? I think that prior to Flores, it was directed toward the defendant. It gave the defendant the benefit of the doubt. And simply remaining silent rather than flat out waiving other issues by saying But, you know, Ms. Christensen, what, you know, obviously the court thought about this in Flores, but I think it's not right to see Flores as just a simple case of remaining silent. What Flores does is it, by way of example, I think, lists all sorts of circumstantial evidence that would lead one to infer the Johnson against Zerps type intentional relinquishment of a known right. If you did not just stay silent but you don't object, you have notice, you object to some things but not others, and on and on, the whole thing that Flores sets forth. And I'm not aware that circumstantial evidence is inadmissible to prove actual waiver, number one. Maybe the indicia of waiver will vary a bit from case to case. I expect that it would. But what Flores does is it identifies a package of things that, taken together, allow that factual inference. Right, Your Honor. I think perhaps Mr. Gross's case may not be the best case to redetermine Flores on because many of those circumstantial factors listed by Flores do exist in this case. They seem to exist here, too. And I've made this particular argument in other cases where we're raising it. And the language has always been the intentional relinquishment of a right. That's Johnson against Zerps, yes. Right. And it is a continuum. I think that it's almost never clear-cut, such as an intentional waiver versus a circumstantial evidence waiver case. But I think the intent has to be there to waive the particular issue raised, which is more in line with general waiver versus forfeiture law. I understand this Court's desire to curtail the amount of argument that has been given in these supervisory cases and perhaps finding circumstantial evidence more readily in these type of cases because there is a remedy that remains for the defendant. However, as we discussed in our brief, that remedy, the modification later, is. . . I'm not sure, though, that's what the purpose of Flores is. The purpose is really to bring to defendants' attention that there is a place where you can address this and the proper place to raise this in the first instance is before the district court, where if there is a constitutional problem or a vagueness issue on these conditions, that the district court can cure it then and there. I agree. Because I think even you will agree that in many sentencings, challenges like these are not thought of at the time, and they're almost afterthoughts, that the district court didn't have the chance to address in the first instance. And this is actually an interesting example of that. I'm not going to point fingers at anybody who came up with this language, but I've probably read this condition number 11 ten times. As have I, Your Honor. It's not well written. I mean, of defendants' criminal record based on risk associated with defense. . . I don't know what based on even modifies. And you've got the government saying, oh, it's really just saying that's why we have this, in which case it all looks like surplusage to me, or whether somebody, as you construe it, means notification requirements somehow based on means these are the things you need to talk about in your notification. I don't know what this thing means. Had this been raised to Judge Conley, maybe he could have fixed it or clarified what he wanted to say. And it's not that we're going to forget the point either, I can assure you. We will take this seriously. But if you don't raise it at the time the district judge has that opportunity, then maybe later fixing is the best we can do. I agree, Your Honor. And to address your point, Judge Senior, first is that, yes, it's absolutely a defendant's responsibility. And I wish that it had been raised. And defense counsel, to her credit, did raise challenges. Some, right. Some. Not these. Sure. And I will point out, to your point, Judge Wood, that in Edwards, the defender who handled that case in the district court did actually challenge this condition. I'm not entirely sure it was challenged in the same manner. And a compelling reason for me is that this condition is being imposed. I know of three cases. Two of them were mine. Mark Harder's case, which is mentioned in my briefing. Mr. Gross' case and Mr. Edwards' case. And it is an extremely difficult condition to understand. Is this a condition that's written in the form that the district court uses, the J&C form, or is this some new language that's being created or offered by the probation department or the government that's being added into the forms? Well, my understanding is, and it's different in each district. Correct. I'm talking about in your district. Or the district where Mr. Gross was prosecuted in Wisconsin. And opposing counsel might actually, who practices in that district and does these cases, might know exactly where this provision comes from. I think it attempts to address this court's questioning of a notifying third party of risks, which is a vaguer condition. It seems to be, it's listed as standard condition 11. So it seems to be. It looks like it's in the form, but I don't know if this is a wrappable, you know, thing. You wouldn't be able to spot it. I don't know if it's cut and paste. I know some districts use check boxes, so all the conditions are on the form and they just check the boxes. I think the Western District cuts and pastes. That's what this looks like. Right. But it's probation who's making those. So when I do admit the defense counsel needs to be better about making these objections, I also submit that the government has an obligation to make sure these are understandable conditions. And, yes, this one is a perfect example of I read it one way and argued it. And when the government argued the other way, I looked at it and I said, okay. I understand the government's argument. I understand that that's the interpretation that the condition itself essentially ends after the words criminal record. It still remains vague because of the extent of Mr. Gross's criminal record. And then the rest of it, I'm not sure what that means then for the defendants, for his obligations to the probation office. So it is up to probation and the district court and the government and defense counsel to not have conditions like this that are hard to understand, hard to implement. I have a hard time explaining it to my client. When is Mr. Gross subject to be released? 2036. Okay. So he has time. Certainly when he's released, he could go back and ask for clarification. Absolutely. And I think the thing of things. But will he have counsel at that point? No. No, that's the problem. I mean, everybody says if you want to do it counseled, you've got to do it up front. Right. And the problem then becomes, from a defendant's perspective, is that no defendant who's now served his time and a significant amount of time necessarily wants to submit himself to the district court. And while we all think that's perfectly normal and we're comfortable in front of judges,  And would he not have counsel because the CJA doesn't provide for it at that point? Right. Some district court judges, and this is just from my experience, will appoint an attorney to represent someone in that situation, but not all do. I don't know Judge Conley's preferences. I don't know if Judge Conley will be on the bench at this point. I don't know if the probation officer who wrote it will be employed. So it is subject to interpretation. The easiest way is to, again, to have this court send it back. That sends a message to the district courts, which I think necessarily goes more directly to probation. Also, I continue to send the message to defense counsel. In the remaining seconds, I would like to just quickly address the second issue in that there is a mistake in that issue, and that's the second condition, is the victim versus victims. And I think that that does need to be corrected to, at this point, give Mr. Gross a full understanding of what he's prohibited from doing on supervised release. So unless the court has questions, I see that my time is nearly up. All right. Thank you very much. Ms. Pfluger. May it please the court, my name is Julie Pfluger. I represent the United States in this matter. The government does not disagree with your statement that this condition is poorly worded. This has been an ongoing discussion with probation and the court in our office to modify these conditions to be in compliance with this court's precedents and the law. I don't have the faintest idea. Actually, every time I read it, it got worse. So I thought of more things it might mean. Is this condition pre-printed in the release form, or is this something that's cut and pasted and added in? As I understand it, it is pre-printed. However, it's subject to modification. It's being modified all the time. So what is pre-printed is being modified. The court, I'm sure, is aware that the original condition, when Mr. Gross appealed, was that he must notify of risk. So this is probation attempting to get this right, and clearly it's not perfect yet, but they will work on it, and we certainly will inform them of this court's opinion of this condition and continue working with them. However— It seems like this is an area, and I know this has happened in the Northern District of Illinois before, where all three sides could get together, not for purposes of any particular case, but to try to improve this. When you're not advocating for a particular client at the time, just let's make it better. And I can tell this court that that is happening and is ongoing, and probation, along with our office and defense counsel, are really working to make these conditions clearer. Do you know what you mean by it? As I understand it, and when talking to probation, the meaning is that they must— So the first part of this is as directed by probation. So the defendant is not going to have to notify anyone of anything until probation says you need to notify, so that will clarify. But it's supposed to be the criminal history, and the others are supposed to be modifiers. So you need to notify people of your criminal history because of the risks and because you're a sex offender and because of SORNA. But why do you have to— That's what you said in the footnote in your brief, but I still don't know. Of those parts of your criminal record that are pertinent, that indicate special risk, the other two parts of this problematic phrase refer to the registration obligation in SORNA, and so maybe you might say, well, registration is separate from the criminal record, so you not only have to notify about the criminal record, but you also have to notify that you're one of those people that has to register under SORNA. It doesn't really say that, but it could say that, and then we would evaluate whether that was the sort of thing that should be said. And I think in discussions with probation and with my office and people in charge of my office, I think the point really is to notify people of your conviction on sexual offenses because that is the danger that is trying to be mitigated here. But of course, this guy, Mr. Gross, has all manner of convictions.  Some relating—I mean, most of them are not sexual offenses. That's correct. Having said that, Your Honors, that we don't disagree that this is not well-written. We do still argue that the defendant waived his appellate challenge here. These conditions of supervised release were in his first sentencing, although the notification one has been modified to try to make it better. But the victim one was exactly the same. There was no objections there. He got the conditions ahead of time. He objected to four conditions, one of which was modified. The court asked—Judge Connolly asked if the defendant wanted the conditions read with the justifications, and the defense counsel said, can I please confer with my client, and then said, I'm aware of no grounds for objecting to the remaining conditions, and then said I'm willing to waive the reading. And he was informed he could ask to modify these when he's released. The government asked that this court find that this was waived. As far as if the court did get to the plain error review, as we've said, that Condition 11 could be worded better, but we don't believe it's plain error. As far as the victims, for Mr. Gross to state that he doesn't know who the victims are, there is an S missing. But I find that hard to believe. The three named victims testified at trial. The three named victims are mentioned in the defense's brief. To say he doesn't know who they are is not believable to me. Their names are in the PSR, too, I think. Yes, they are. And then to say that the part about the 1,000 feet within residence and work, he can't be within, and then to put a map of Sparta, I don't know how useful that is given he won't be out until 2030, and who knows where people will live by then or be working. And it also doesn't say that he can't be within 1,000 feet. He can't loiter. He can't enter. Well, I'm interested that you raise that because I looked at that and it called to mind the long line of Supreme Court decisions about loitering and when is it incompatible with your right to just sit down on a park bench for a few minutes and, you know, what's loitering? And I see other briefs where loitering has some purpose and is it loitering if you're waiting for the light to turn green? I mean, there's all kinds of fuzziness in that word. And I agree, Your Honor, that this condition also could be worded better. However, I don't think that it is—it would still give him notice, a reasonable notice of what he shouldn't do. Don't be hanging around within 1,000 feet. And that he doesn't know where they work, that wouldn't be that hard to find out. But, again, this is something that's in a long time, many, many years. It does affect his ability to be outside in the public because you think loitering means something, but does it mean stand around for more than 10 minutes with no purpose? Or what does it mean? And I think all of these conditions could be worked out with his supervising probation agent who could probably give him better direction to exactly what it means. Having said that, Your Honor, we would ask that these conditions be affirmed. If it is remanded, we would ask that it's remanded just for these two particular conditions to be reworded. And we will continue to work with probation to improve these conditions so that we aren't in front of the court arguing about these so often. That sounds great. Thank you very much. Thank you. And I believe your time expired, Ms. Christensen. Do you have anything else? All right. Very good. Thank you. Then this case will be taken under advisement.